UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO


| | | |
|---|---|---|
| JASON MACLENNAN, | ) | CASE NO. 4:07 CV 2438 |
| | ) | |
| Petitioner, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| | ) | AND ORDER |
| UNITED STATES, et al., | ) | |
| | ) | |
| Respondents. | ) | |

On August 9, 2007, pro se petitioner Jason Maclennan filed the above-captioned action against the United States and the Bureau of Prisons seeking a sentence reduction or compassionate release. Mr. Maclennan is incarcerated at the Federal Satellite Low - Elkton ("FSL-Elkton") in Lisbon, Ohio. Along with his underlying pleading, he has filed a Motion to Fast Track Hearing, Motion for an Order to Appoint a Medical Practitioner and Motion to Appoint Legal Counsel. Mr. Maclennan ultimately seeks an order from this court releasing him immediately from custody and for his voluntary return to his native country, Canada.

*Background*

Mr. Maclennan pleaded guilty to "Inner-State Commerce" in the United States District Court for the Eastern District of North Carolina in 2005. On or about March 4, 2005, he advised the Bureau of Prisons (BOP) that he had been diagnosed as HIV positive in March 1989.

Two months later, he developed symptoms which indicated that the disease had advanced while he was being housed at the Johnston County Jail. Mr. Maclennan complains that he made numerous requests for medical attention, but was denied an evaluation, diagnosis or treatment at the Johnston County Jail. He filed several grievances with the County Jail and the Canadian Consulate General, without success. In a letter, dated October 23, 2005, the Canadian Consulate General's office demanded that Mr. Maclennan receive all necessary medical care. Although his HIV positive status was noted in the Presentence Report, there was no mention of the fact that the disease had advanced. The court sentenced Mr. Maclennan to sixty months imprisonment on November 15, 2005. His projected date of release is July 14, 2009.

It was not until January 2006 that the Johnston County Jail started scheduling appointments for plaintiff at the University of North Carolina at Raleigh. He complains, however, that he was initially not taken to his appointments. Finally, on February 26, 2006, a specialist examined Mr. Maclennan and advised him that his immune system was seriously impaired due to advancing HIV and the lack of treatment for eleven months preceding the examination. Various medications were then prescribed, which he claims he received at the Franklin County Detention Center. Moreover, "the [d]efendants and their contractors, were ordered to provide the plaintiff, to undergo a four week follow up visit with a trained and experienced specialist, following the start of the prescribed medications on February 24, 2006, to determine if the plaintiff's medication were working and /or if any changes were required, and to monitor any possible serious side effects, that could indicate a very serious complication, from this toxic cocktail of medications." (Compl. at ¶ 29.)

Mr. Maclennan claims that since his February 2006 hospital visit he has not received

"a follow up with any medical staff that is trained and experienced to diagnose and analyze the plaintiff's condition, and the effects of the various prescribed medications that could be life altering, or even life threatening." (Compl. at ¶ 30.) He states that he has made several requests for relief within the BOP which "have either been ignored or denied." (Compl. at ¶ 30.) Mr. Maclennan complains that "[t]o evaluate the plaintiff's condition is beyond the experience and training of a general practitioner and physician assistant, which the plaintiff is currently being cared by." (Compl. at ¶ 30.) Although he has been advised to attend sick call within the BOP, Mr. Maclennan argues that his needs are beyond the training of the medical staff at his facility.

Mr. Maclennan, who is a citizen of Canada, believes he will be deported by Immigration Customs Enforcement at the end of his prison term. It is his desire, however, to voluntarily return to his family in Canada through leave of court. He expresses regret for committing the crimes for which he is presently serving his sentence. Moreover, he explains that he has a very supportive family network which would support his reentry to society once he returns to Canada.

He fears that his current level of care is abbreviating his life expectancy. Mr. Maclennan has suffered side-effects from the medications he is taking and the BOP medical staff are ill-equipped to properly address his treatment needs. The side effects from which he is suffering include: low red blood cell count, enlarged red blood cells, low hemoglobin, high cholesterol, pain in both hips and groin area that radiates down to his knees, pain in his shoulder joints, numbness in both hands, headaches, a cyst on left femur bone, fatigue, a lump on his right breast and restricted breathing. Dr. P. Harvey, his primary care giver at FSL Elkton, changed his cholesterol medication from Lipitor to LOVASTATIN, but did not take into account the fact the it cannot be mixed with

3

his current HIV medications. It was not until his father intervened that Dr. Harvey prescribed an alternative. Even the physician assistants have "stated that they are not trained in the plaintiff's medical needs." He seeks an order from this court immediately releasing him from prison so that he can return to Canada and "obtain the proper medical care by trained and experienced specialist, which all Canadian citizens are entitled to, plus have access to all other programs and services that are also available to every canadian [sic] citizen." (Compl.at ¶40, 3.) He maintains that the BOP's "refusal" to treat his ongoing medical issues, which may have caused irreversible damage, or altered his quality of life, is cruel and unusual punishment in violation of the Eighth Amendment of the Constitution. Citing Toombs v. Bell, 798 F.2d 297 (8th Cir. 1986) and "Wellman v. Faullener [sic], 715 F.2d 559," he asserts that the BOP has been deliberately indifferent to his medical needs.[1]

## 28 U.S.C. § 2241

The court construes this action as arising under § 2241 because Mr. Maclennan challenges both the imposition of his sentence and its continued execution. See United States v. Jalili, 925 F.2d 889, 893-94 (6th Cir.1991). Because this action is based upon an event which occurred after sentencing, the court will apply the law governing § 2241 actions. See Cohen v. United States, 593 F.2d 766, 770-71 (6th Cir.1979).

As a threshold matter, federal prisoners are required to exhaust administrative remedies before filing a petition under 28 U.S.C. § 2241. Little v. Hopkins, 638 F.2d 953, 954 (6th Cir.1981). Although Mr. Maclennan makes general statements regarding his attempts to exhaust his remedies regarding better medical care, there is no indication that he ever formally exhausted his

---

[1] Both the case citation and caption he cites for Wellman are nonexistent. The court presumes Mr. Maclennan is referring to Wellman v. *Faulkner*, 715 F.2d *269* (7th Cir. 1983) inasmuch as the facts and case law in that opinion address some of the same issues raised in this pleading.

4

request for compassionate release from the warden, or appealed the decision or raised an Eighth Amendment claim. Thus, he has procedurally defaulted his claims and must show cause and prejudice for the failure to exhaust. See Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 760 (3d Cir.1996); Sanchez v. Miller, 792 F.2d 694, 697 (7th Cir.1986). Although an intentional decision not to exhaust procedural remedies generally does not constitute cause, official interference making compliance impracticable will. Amadeo v. Zant, 486 U.S. 214, 221-22 (1988). Mr. Maclennan has not shown that the BOP has made compliance with the exhaustion requirement impracticable.

Even if his claims were not procedurally defaulted, they would not merit relief. In order to establish an inadequate medical care claim in violation of the Eighth Amendment, a prisoner must demonstrate that the defendant acted, or failed to act, with "deliberate indifference to serious medical needs." Farmer v. Brennan, 511 U.S. 825, 835 (1994) (quoting Estelle v. Gamble. 429 U.S. 97, 104 (1976)). Deliberate indifference is the reckless disregard of a substantial risk of serious harm: mere negligence will not suffice. Id. at 835-36. Furthermore, a difference of opinion between a prisoner and a doctor over diagnosis or treatment also fails to state an Eighth Amendment claim of deliberate indifference to a serious medical need. Westlake v. Lucas, 537 F.2d 857, 860 n. 5 (6th Cir.1976). The Eighth Amendment does not mandate that a prisoner be housed without discomfort. See Rhodes v. Chapman, 452 U.S. 337, 349 (1981). Although plaintiff disputes the adequacy of his treatment, this court must refrain from second-guessing the defendants' medical judgments. See Westlake v. Lucas, 537 F.2d 857, 860 n. 5 (6th Cir.1976). Accepting Mr. Maclennan's factual allegations as true, he can prove no set of facts which would entitle him to relief on this claim. See Lewis v. ACB Bus. Servs., Inc., 135 F.3d 389, 405 (6th Cir.1998); Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir.1993). His allegations do not establish that the defendants were deliberately indifferent

to his serious medical needs. See Estelle, 429 U.S. at 104.

As the Eighth Amendment provides no relief, the early release of terminally ill prisoners is a matter more properly weighed by the legislature and prison administration than the courts. See id. Notwithstanding the fact that Mr. Maclennan has failed to state a violation of the Eighth Amendment, this court also lacks jurisdiction to grant compassionate release sua sponte. A district court may not modify a defendant's federal sentence based on the defendant's ill health, except upon a motion from the Director of the BOP. See 18 U.S.C. § 3582. No such motion was filed in the instant case.

Based on the foregoing, the petition is dismissed pursuant to 28 U.S.C. § 2243. The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.

Date: October 23, 2007         S/John R. Adams
                               JOHN R. ADAMS
                               UNITED STATES DISTRICT JUDGE